UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALICE MCCARTER                                                                                                  PLAINTIFF

V.                                                                                      CIVIL ACTION NO. 3:14-cv-479-CWR-FKB

COMMISSIONER CAROLYN W. COLVIN
United States Social Security Administration                                                  DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Plaintiff's Motion for Summary Judgment [9] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [11]. Having considered the record in this matter, the undersigned recommends that Defendant's motion be granted and Plaintiff's motion denied.

**HISTORY**

Plaintiff's application for social security disability, disability insurance benefits, and Supplemental Security Income (SSI) was denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ) on May 24, 2013, [8] at 19,[1] and the Appeals Council on April 25, 2014, *id.* at 1. Plaintiff was 51 years old at the time of the alleged onset of disability, making her an "individual closely approaching advanced age" for social security purposes. Plaintiff has a limited education and past relevant work experience as a poultry deboner. *Id.* at 147-49. She alleges disability due primarily to pain and swelling in her knees.

---

[1]References to page numbers are to the administrative record as originally paginated.

Following the applicable five-step analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 27, 2011, (step 1), and had severe impairments of osteoarthritis of knees status post bilateral arthroscopic meniscectomy, hypertension, and obesity (step 2). *Id.* at 11-12. The ALJ concluded that Plaintiff's impairments were not as severe as any impairment listed as presumptively disabling in the applicable regulations (step 3). *Id*. The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, with the following limitations:

> [N]o climbing ladders, ropes, or scaffolds; occasional climbing ramps/stairs; occasional stooping, kneeling, crouching, and crawling; and no exposure to heights/hazards. She must be permitted to alternate from standing to sitting at will.

*Id.* at 13. The ALJ determined that Plaintiff was unable to return to her past relevant work (step 4). *Id.* at 17-18. At step 5, utilizing the testimony of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing other work and therefore was not disabled. *Id.* at 18-19.

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends. The plaintiff bears the burden through the first four steps of the analysis. At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform. *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Adler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)*; Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.

**THE ISSUES PRESENTED**

1.  **Plaintiff's Residual Functional Capacity ("RFC")**

    The regulation addressing RFC determination provides in pertinent part as follows:

    *Evidence we use to assess your residual functional capacity.* We will assess your residual

> functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. . . . However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. . . . We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

  *a. RFC Determination and Ability to Stoop*

  Plaintiff first argues that the ALJ committed reversible error in rejecting the opinion of her treating physician, Dr. William Lawrence, as to her RFC. Plaintiff's treating physician completed a medical source statement to which the ALJ ascribed "limited probative value":

> In a medical source statement completed by Dr. Lawrence for the claimant's disability insurance carrier on June 22, 2011, he reported the claimant can perform no prolonged standing, no stooping, no squatting. He did not expect any improvement in the claimant's functional capacity and did not expect the claimant to return to work. He reported the claimant can sit continuously (67-100%), stand occasionally (1-33%), and walk occasionally (1-33%). He indicated the claimant can never climb, but can twist, bend and stoop occasionally (1-33%). The claimant would be able to reach above shoulder level frequently (34-66%). The claimant could lift/carry up to ten pounds occasionally (1-33%). The claimant could lift/carry eleven to one-hundred pounds continuously (67-100%). (Exhibit 8F).
>
> The undersigned acknowledges this report has limited probative value because of internal inconsistencies highlighted by the claimant's representative. Thus, the undersigned resolved all reasonable doubt in the claimant's favor by limiting her to light work with postural limitations and a sit/stand option.

[8] at 15-16.

Plaintiff argues that without her treating physician's recommendations as to her residual RFC, the ALJ could not properly determine RFC. Plaintiff gives particular attention in her argument to the ALJ's finding that she can stoop occasionally, arguing that the Social Security Administration has emphasized in its rulings the significant impact of the inability to stoop at least occasionally on the occupational base of light and sedentary jobs.

The undersigned concludes that the ALJ did not err in assigning limited weight to Dr. Lawrence's opinion. Ordinarily, a treating physician's opinion as to the nature and severity of a claimant's impairments is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). But, if good cause is shown, that opinion may be given little weight or even no weight. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). There was clearly good cause in the present case, because the opinion was internally inconsistent on its face.

Furthermore, the ALJ's failure to give more weight to Dr. Lawrence's opinion did not, as Plaintiff argues, leave the ALJ with insufficient evidence from which to determine her RFC. Plaintiff suggests that the ALJ could not make a determination of RFC absent a specific medical opinion on Plaintiff's ability to perform each exertional requirement of light work. This is not the law. Although the ALJ is to base his or her findings on evidence of record, including medical evidence, the ultimate issue of a claimant's RFC is reserved to the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183. The report of the consultative exam performed by Dr. Pasha contains detailed evidence as to Plaintiff's physical abilities. In particular, Dr. Pasha found that Plaintiff had a full range of motion in all extremities, including both knees, and in her pelvic girdle and lumbar spine, that she was able to ambulate without a

5

cane, and that she was able to squat. The findings from Dr. Pasha's consultative examination contain sufficient information from which the ALJ could make a finding as to Plaintiff's RFC. Furthermore, they provide substantial evidence in support of the ALJ's specific findings, including his finding that she is able to stoop occasionally.

      b.      *Unavailable Records/Consultative Examination*

The report from Dr. Lawrence was issued in June of 2011, shortly after Plaintiff's third knee surgery. Following the hearing, the ALJ requested that Plaintiff's counsel provide her with updated records from Dr. Lawrence, but Plaintiff's counsel was unable to obtain them. [8] at 204. Plaintiff argues that because the ALJ requested medical records which were no longer available/unobtainable, she should have granted Plaintiff's request for an additional examination or have obtained a medical expert to testify as to Plaintiff's RFC.

A consultative examination was performed by Dr. Pasha on September 7, 2011, and the ALJ referenced Dr. Pasha's findings in making her decision. This fulfilled the Commissioner's duty to develop the record, and as indicated *supra*, the findings from that examination were sufficient for a determination as to Plaintiff's RFC. The ALJ was under no duty to independently attempt to obtain records that were unavailable or to request a *second* consultative examination. Furthermore, Plaintiff has failed to establish any prejudice in this regard. *See Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000)(where ALJ fails to fully and fairly develop the record, reversal is appropriate only if prejudice is shown).

**2.**      **Pain Medicine**

Plaintiff claims that the ALJ erred in presuming she did not get her pain medicine refilled and argues that the ALJ should not have considered that factor in evaluating her credibility as to

pain and swelling.   The ALJ mentioned Plaintiff's pain medication in the following context:

> The claimant's pharmacy records indicate she filled a prescription for Lortab in June 2011.  Her next documented purchase of Lortab occurred almost two years later in March 2013, one month before her disability hearing and one month after she reported doing well at her visit to Forest Baptist Mission Clinic.  The pharmacy records indicate the claimant filled no prescriptions at all during the year 2012, except one refill each of Amlodipine and Hydrochlorothiazide in January 2012.  The undersigned notes the claimant was able to purchase Tramadol (Ultram) and Meloxicam (Mobic) for $4.00 each in 2011, yet she did not purchase these medications at Walmart Pharmacy during 2012 or 2013, despite having prescriptions for Mobic from Forest Baptist during this time period (12E).  This evidence suggests the claimant's knee pain and swelling may not be as severe as she alleges.

[8] at 16.

Plaintiff maintains that her pain medication refills did not show on her pharmacy records because she had her medications refilled at the church clinic where she obtained her primary care.  Plaintiff testified that she took Tylenol for pain, and there is no evidence indicating that she obtained any prescription pain medication at the clinic.  The ALJ did not err in relying upon this factor in assessing Plaintiff's credibility.

**3.      Literacy**

In response to a question about her literacy level, Plaintiff testified that she can read and write "a little bit.  Not much." *Id*. at 56.  In her memoranda, Plaintiff states that the ALJ erred in presuming that she had demonstrated basic literacy and argues that her deficiencies in these areas cause her to be unable to perform the jobs identified by the ALJ as alternative work.

The ALJ stated her findings on this issue as follows:

> ....  She completed the tenth grade and was in special education classes.  She said she is able to read and write "a little bit, not much."  However, in an Adult Disability Report completed by the claimant, she acknowledged she was able to read and write (Exhibit 2E).  She also demonstrated basic literacy in completing

Exhibit 4E.

[8] at 13. Plaintiff argues that there is no evidence that Plaintiff herself completed either the Adult Disability Report, *id.* at 138-45, or Exhibit 4E, *id.* at 155-61, as neither is signed by Plaintiff. Even so, Plaintiff represented in the former of these documents that she could read and write. The ALJ did not err in her determination of Plaintiff's literacy.

The ALJ found that Plaintiff could perform the jobs of storage rental clerk, ticket seller, and booth cashier. The *Dictionary of Occupational Titles* (DOT) assigns language development levels of 3, 2, and 2, respectively to these jobs.[3] Plaintiff argues that the descriptions of these levels do not match her literacy level. However, as Defendant points out, the DOT descriptions provide the maximum requirements for these jobs as generally performed, not the full range of requirements. *Haas v. Barnhart*, 91 Fed. Appx. 942, 948 (5th Cir. 2004). The VE heard Plaintiff's testimony that she could read and write "a little bit" but "not much" and then testified

---

[3]The DOT describes the reading and writing requirements of these levels as follows:

LEVEL 3:    Reading: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

Writing: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.

LEVEL 2:    Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stores and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

*Dictionary of Occupational Titles*, App. C (rev. 4th ed. 1991).

Case 3:14-cv-00479-CWR-FKB   Document 14   Filed 08/05/15   Page 9 of 9

that Plaintiff could perform these jobs. The VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff is capable of performing the jobs of storage rental clerk, ticket seller, and booth cashier.

## CONCLUSION

Based on the foregoing, the undersigned recommends that the Commissioner's motion be granted, that Plaintiff's motion be denied, and that the Commissioner's decision be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636.

Respectfully submitted on the 3rd day of August, 2015.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE