IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALICE MCCARTER                                                              PLAINTIFF

V.                                                       CAUSE NO. 3:14-CV-479-CWR-FKB

COMISSIONER CAROLYN W. COLVIN                                              DEFENDANT
United States Social Security Administration

**ORDER**

Before the Court is the plaintiff's objection to the Magistrate Judge's Report and Recommendation (R&R). Docket No. 15. The R&R recommends affirming the Commissioner's denial of social security disability, disability insurance benefits, and supplemental security income. Docket No. 14. The Commissioner raised no objection to the R&R. Docket No. 16.

The Court has reviewed *de novo* the portions of the R&R to which the plaintiff objected. 28 U.S.C. § 636(b). It finds that reversal and remand for further administrative proceedings is warranted as the ALJ failed to fully and fairly develop the record, *see Newton v. Apfel*, 209 F.3d 448, 457-58 (5th Cir. 2000), and the record does not contain substantial evidence to support the Commissioner's decision. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

I.   **Procedural History**

On April 7, 2011, Alice McCarter filed two applications with the Social Security Administration: one for disability and disability insurance benefits and one for supplemental security income. Docket Nos. 8, at 117 and 119. She claimed a disability onset date of February 27, 2011. *Id.* The Commissioner denied both of McCarter's claims on June 2, 2011, and upon reconsideration on September 9, 2011. Docket Nos. 8, at 90 and 99. After a video hearing held

on April 16, 2013, the ALJ denied the claims on May 24, 2013. Docket No. 8, at 12. On April 25, 2014, the Appeals Council denied review of McCarter's claims. Docket No. 8, at 4.

McCarter initiated this action in this Court on June 19, 2014 and on October 30, 2014, timely filed her Motion for Summary Judgment and the defendant responded. Docket Nos. 10 and 12. On August 5, 2015, the Magistrate Judge affirmed the denials and McCarter timely objected raising two objections to the R&R. Docket No. 15. McCarter first argued that the ALJ erred when she assigned limited weight to her treating physician's medical source statement and failed to fully develop the record in its absence. McCarter also contended that the ALJ erred in her credibility determinations concerning her extent of pain and literacy proficiency and, thus, failed to establish the existence of alternative work that McCarter could actually perform. *Id*.

## II.     Standard of Review

"On judicial review, the ALJ's determination that a claimant is not disabled will be upheld, if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and if it was reached through the application of proper legal standards." *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir. 2000) (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (quotation marks and citation omitted). "Substantial evidence must do more than create a suspicion of the existence of the fact to be established." *Harrell v. Bowen*, 862 F 2d. 471, 475 (5th Cir. 1988). In applying the substantial evidence standard, the court must scrutinize the record to determine whether such evidence is present, *see*, *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), but it may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Audler*, 501 F.3d at 447 (citation omitted).

## III.     Discussion

"When assessing Social Security disability claims, the ALJ and the courts must give 'due regard for the beneficent purposes of the legislation' and apply 'a more tolerant standard' than that which is used in a typical suit." *McFadden v. Prudential Ins. Co. of America*, 877 F. Supp. 2d 481, 492 n. 11 (S.D. Miss. 2012) (quoting *Ventura v. Shalala,* 55 F.3d 900, 902 (3rd Cir. 1995)); *see also Moran v. Astrue,* 569 F.3d 108, 112 (2nd Cir. 2009) ("The [Social Security] Act must be liberally applied for it is a remedial statute intended to include not exclude.").

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To receive disability benefits, a claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at (2)(A).

In reaching a decision, the ALJ applies a five-step sequential evaluation process, to determine whether:

> (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry is terminated. The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform.

*Audler,* 501 F.3d at 447-48 (citation omitted). "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton,* 209 F.3d at 455 (citation omitted).

Here, the ALJ determined that McCarter had not engaged in substantial gainful activity since February 27, 2011, and that she suffered from severe impairments of osteoarthritis of the knees status post bilateral arthroscopic meniscetomy, hypertension, and obesity. Docket No. 8, at 15. The ALJ found that McCarter's impairments did not meet or equal a listed impairment. *Id.* The ALJ concluded that McCarter had a residual functional capacity (RFC) to perform light work with the following limitations: "no climbing ladders, ropes, or scaffolds; occasional climbing ramps/stairs; occasional stooping, kneeling, crouching, and crawling; and no exposure to heights/hazards. She must be permitted to alternate from standing and sitting at will." *Id.* at 16.

### A. Evidence of McCarter's Treating Physician

McCarter contends that the ALJ erred in two ways: by rejecting the medical source statement of McCarter's treating physician, Dr. William Lawrence, DO, as to her RFC and by failing to fully develop the record in its absence.

Because Social Security proceedings are inquisitorial rather than adversarial, the ALJ has a duty to "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 103-04 (2000). While an ALJ should typically request a medical source statement to determine a claimant's RFC, the Fifth Circuit has found its absence does not automatically render the record incomplete. *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining

disability." *Newton*, 209 F.3d at 455 (citation omitted). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

The ALJ may, however, reject the opinion of any physician when there is evidence in the record that supports a contrary conclusion. *Robinson v. Colvin*, No. 3:14-CV-832-TSL-JCG, 2015 WL 6828565, at *6 (S.D. Miss. 2015) (citing *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir.1987)). An opinion may also be given little or no weight if good cause is shown. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citation omitted). As good cause exceptions, the Fifth Circuit has recognized "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*

The Magistrate Judge ruled that there was "clearly good cause" to afford little weight to Dr. Lawrence's statement because it contained internal consistencies. Docket No. 14, at 5. The Magistrate Judge also explained that the absence of Dr. Lawrence's opinion "did not, as McCarter argues, leave the ALJ with insufficient evidence from which to determine her RFC," *see* Docket No. 14, at 5, because Dr. Azhar M. Pasha conducted a consultative examination of McCarter on September 9, 2011, and provided a Consultative Examination Report with "detailed evidence" as to McCarter's physical abilities.[1] Docket No. 8, at 334.

---

[1] The ALJ summarized Dr. Pasha's report as follows: "Dr. Pasha found no significant impairment of the spine or upper extremities, and no neurological deficit, no reduced strength, and no limited range of motion involving the upper and lower extremities." Docket No. 8, at 19. The ALJ also stated that Dr. Pasha's report noted that McCarter was also able to squat and ambulate without a cane. The report, however, stated only that "[p]atient is able to squat. Able to ambulate without a cane." Dr. Pasha also reiterated, in her recommendations, that McCarter does not need a cane to **ambulate**. She did not indicate that McCarter could squat without a cane. Docket Nos. 8, at 333-35.

It is undisputed that Dr. Lawrence's statement included internal inconsistencies.[2] These inconsistencies, however, do not clearly constitute good cause to afford little weight to the statement. The inconsistencies, obviously the result of an error, are not supported by any objective record evidence. The ALJ herself even stated, "It also seems unlikely Dr. Lawrence would provide no more useful opinion evidence than the form he completed as Exhibit 8F." Docket No. 8, at 20. The ALJ should not have assigned limited weight to McCarter's treating physician's medical evidence based on these obvious error. In this very case, for example, the ALJ, did not disregard the medical evidence of Forest Physical Therapy, Docket No. 8, at 9, which identified McCarter as "BM" (Black Male) instead of "BF" (Black Female). Docket No. 8, at 271. This is so because this misidentification of McCarter was clearly an error recognized as such by the ALJ.

Even in refusing to recognize the inconsistencies in Dr. Lawrence's statement as an error, the AJL could have resolved them with reasonable effort and without substantial delay.[3] *See Corbitt v. Commissioner of Social Sec. Admin.*, No. 3:10-cv-558-CWR-LRA, 2013 WL 603896, *3 (S. D. Miss. Feb. 19, 2013) (quoting *Chandler v. Astrue*, No. 1:10-cv-60, 2010 WL 4362853, *5 (N.D. Miss. Oct. 27, 2010)) ("It is clear that additional development of the record, specifically in the form of opinions from the treating physicians, could have been easily obtained, and probably would have been helpful, had the ALJ sought such information."). By failing to do so, the ALJ did not satisfy her duty to fully develop the record. *See Newton* 209 F.3d at 457-58

---

[2]Dr. Lawrence, in the same box, checked that McCarter was able to lift up to ten pounds occasionally and up to 100 pounds continuously. Docket No. 8, at 337.
[3]Every reasonable effort means that "we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow up request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our follow-up request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case." 20 C.F.R. § 404.1512 (2015).

("The Fifth Circuit also imposes a duty on an ALJ to develop the facts fully and fairly relating to an applicant's claim for disability benefits.  If the ALJ does not satisfy his duty, his decision is not substantially justified.") (citation and quotation marks omitted).

Dr. Lawrence's medical source statement was entitled to great weight.  He was McCarter's longtime treating physician, and he is an orthopedic surgeon who specializes in and treated McCarter for her severe impairment.[4]  Moreover, Dr. Lawrence treated McCarter during a period of almost two years from August 31, 2009 through May 4, 2011, while Dr. Pasha evaluated her only once on September 9, 2011.[5]

Moreover, while Dr. Pasha's Consultative Examination Report provides evidence as to McCarter's physical abilities, *see*, Docket No. 8, at 334, it does not contain the "detailed evidence" as determined by the Magistrate Judge.  Docket No. 14, at 5.  The sole purpose of Dr. Pasha's consultative examination of McCarter was to make a disability determination, but that report was less detailed than any other evidence in the record.  Particularly, it did not provide a quantitative analysis concerning any of McCarter's physical abilities.

Based on a review of the record, unlike Dr. Lawrence's statement, it is Dr. Pasha's statement that meets the good cause exception because it is not supported by the evidence as a whole.  For example, in the Disability Status Update, Dr. Lawrence noted that, as of his last examination on June 6, 2011, McCarter could stand and walk **occasionally**, **never** climb, and twist/bend/stoop **occasionally**.  Doc. 8, at 337.  Also, in the Disability Report Form, Independent Healthcare MGMT indicated that, as of its last examination of McCarter on April 4, 2011, it was difficult for McCarter to walk.  Doc. 8, at 302.  Records from Forest Physical Therapy Clinic,

---

[4] Dr. Lawrence performed two knee surgeries on McCarter and treated her for osteoarthritis of the knees post bilateral arthroscopic meniscetomy.
[5] The ALJ stated that she relied on Dr. Pasha's statement because Dr. Pasha's evaluation of McCarter took place several months after Dr. Lawrence completed his opinion statement.  Docket No. 8, at 19.

dated June 29, 2011, stated that Plaintiff "can't squat, stoop or stand **for long periods**." Docket No. 8, at 303.  And the intake interviewer, who completed a face to face interview with McCarter, noted in the Disability Report Field Office Form, dated April 7, 2011, that McCarter had difficultly standing and walking, and that "she got up real slow and walked with a limp when she left."  Docket No. 8, at 139.

After review of the record, as a whole, the Court finds that the ALJ did not satisfy her duty to fully develop the record and without such, the record does not contain substantial evidence to support the ALJ's determination of McCarter's RFC.

### B. ALJ's Credibility Determination of McCarter's Severity of Pain

McCarter also argues that the ALJ erred in her credibility determination concerning her severity of pain. The ALJ may discredit a claimant's testimony when it conflicts with medical evidence in the record. *See Newton*, 209 F.3d at 459.  The ALJ may also, however, seek clarification from treating physicians or medical sources when evidence is ambiguous and there is no sufficient evidence to make a determination of disability.  20 C.F.R. § 404.1520b.  The Fifth Circuit has warned against exclusive reliance on a claimant's decision to forego a particular medication when there is substantial contrary medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).  Such is the case here.

The ALJ determined that McCarter's pain was not as severe as she alleged because pharmacy records did not show refills for pain medication "prescriptions" given to McCarter by the Forest Baptist Mission Medical Clinic.  McCarter insists, however, that the clinic "refilled" her pain medication.  The Magistrate Judge agreed with the ALJ stating that "there is no evidence indicating that [McCarter] obtained any prescription pain medication at the clinic." Docket No. 14, at 7.  The ALJ must have overlooked some things in the record because the

record reveals the opposite. Evidence from Forest Baptist Mission Medical Clinic, between January 2012 and September 2012, establishes that the clinic gave McCarter the pain medication Mobic and refills.[6] Docket No. 8, Ex. 10F. This medical evidence is consistent with McCarter's testimony that she was taking more than one medication for her pain.[7] It is also consistent with McCarter's Claimant's List of Medications form, dated April 16, 2013, wherein she noted that she was taking both Mobic and Tylenol Arthritis. Docket No. 8, Ex. No. 13E.

The ALJ's finding that McCarter was not taking prescription pain medication and that she exaggerated the severity of her pain is contradicted by substantial record evidence.

### C. ALJ's Credibility Determination Concerning McCarter's Literacy Level

McCarter contends that the ALJ erred when she determined that McCarter possessed the literacy proficiency to perform alternative work that requires level 2 and 3 reading skills.[8] To support a finding that a claimant is not disabled at step five of the sequential evaluation process, the ALJ must provide evidence that other work exists in significant numbers in the national economy that that the claimant can do based on her RFC and vocational factors. 20 C.F.R. §

---

[6] There appears to be some ambiguity concerning the use of the terms "refills" and "prescriptions." Pursuant to § 404.1520b, the ALJ could have simply sought clarification from the clinic.

[7] The ALJ concluded that McCarter's testimony concerning the extent of her pain was not credible because she testified that she took Tylenol Arthritis. The ALJ construed this testimony to mean that Tylenol Arthritis was the only medication that McCarter took for her pain.

[8] The ALJ found that Plaintiff could perform jobs of storage rental clerk, ticket seller, and booth cashier. The DOT describes the reading and writing requirements of these levels as follows:
> LEVEL 2: Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
> Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
> LEVEL 3: Reading: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.
> Writing: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.

Dictionary of Occupational Titles, App. C (rev. 4th ed. 1991).

416.960(c)(2).  Vocational factors include, *inter alia,* education.  *Id.* at (1).  The significance of a claimant's educational background may depend on whether the claimant received formal education and, if so, how much time has lapsed between the education and the onset of the impairment.  20 C.F.R. § 404.1564(b).  Numerical grade levels may not always represent a claimant's actual educational abilities.  *Id.*

The ALJ acknowledged that McCarter testified that she could read "a little bit, not much," that she completed the tenth grade, and that she was in special education classes.  Docket No. 8, at 16.  The ALJ concluded that McCarter possessed "basic literacy" skills because, in her Adult Disability Report, she answered "yes" to the questions of whether she was able to "read and understand English" and "write more than your name in English."  The ALJ also supported her conclusion by explaining that McCarter also demonstrated basic literacy in completing the Adult Function Report.  The ALJ determined that McCarter's testimony is contrary to evidence presented in the forms.  It is not.

First, the reports are the only evidence in the record that might be taken as evidence that McCarter possessed basic literacy skills, but they have little probative value.  *See Albritton v. Sullivan*, 889 F.2d 640, 643 n. 2 (5th Cir. 1989) (finding that the Social Security forms, including a checklist inquiring about claimant's difficulties reading and writing, had no probative value absent any evidence that claimant's literacy skills were tested).  These forms do not establish any evidence that McCarter possesses the reading and writing proficiency to perform jobs that require reading and writing of levels 2 and 3.  McCarter's reading and writing proficiencies were not tested and, therefore, are unknown.

Second, McCarter's formal education is no longer meaningful.  She received special education through the tenth grade in 1975.  McCarter's level of education, received over 30 years

ago, can hardly be considered meaningful today, especially since she has not received any specialized training.  *Id.* at 643; *cf. Caradine v. Astrue*, No. 1:08-CV-305-DAS, 2009 WL 3769771, at *6 (N.D. Miss. 2009) (finding that although claimant was in special education classes in high school, he was not functionally illiterate because he completed a vocational training program at a community college and received a janitorial certificate).  The conclusion that McCarter demonstrated basic literacy skills is not supported by substantial evidence.

### D. Defective Hypothetical Question

McCarter argues that the ALJ erred when she proffered to the Vocational Expert (VE), a defective hypothetical question that failed to accurately reflect her literacy proficiency and, thus, led to the ALJ's erroneous determination of jobs she could perform.

An ALJ's hypothetical question must reasonably incorporate the claimant's disabilities. *Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994).  "An ALJ may not rely on a hypothetical without giving the claimant an opportunity to correct deficiencies in the question." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (citing *Bowling*, 36 F.3d at 436.).  A claimant's failure to point out the problems in a defective hypothetical, however, does not make it a proper basis for a determination of non-disability.  *Id.*

Here, the ALJ relied on her unsupported finding that McCarter had basic literary skills to present the following hypothetical question:

> A. I have a question.
> Q. Okay.
> A. Education. Are we going with 10th grade Special Ed, or –
> **Q. We're going with a limited education with basic reading skills.**

Docket No. 8, at 78-79.

The Court finds that substantial evidence does not support the ALJ's finding that McCarter had "limited education" according to the regulations.  Limited education is defined as:

11

> [A]bility in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 404.1564(3).

The evidence indicates that McCarter did not have limited education. Although she completed the tenth grade, it was special education. Furthermore, McCarter never developed advanced math skills because she testified that she could only keep up with her checking account balances "a little bit" and that someone helped her with it. Docket No. 8, at 59 and 60. Additionally, McCarter did not acquire skills in her past work as a chicken deboner that could be applied to meet the requirements of storage rental clerk, ticket seller, or booth cashier, vocations for which the ALJ determined McCarter was qualified. The evidence shows that McCarter never used math or was required to complete paperwork as a chicken deboner.

Moreover, the evidence concerning McCarter's reading proficiency was not available to either the ALJ or to McCarter because the evidence used to make such determination had no probative value and McCarter's proficiency had not been tested. Therefore, McCarter did not have a fair opportunity at the hearing to challenge the hypothetical question. *See Boyd,* 239 F.3d at 706.

The record as a whole does not support a finding that McCarter had limited education. Rather the evidence indicates that she may have had "marginal education." Marginal education is defined as having the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(2).

**IV.    CONCLUSION**

This Court declines to adopt the R&R. The Plaintiff's motion for summary judgment is granted and the Commissioner's motion to affirm is denied. Accordingly, pursuant to the fourth sentence of 42 U.S.C. § 405(g), this Court reverses the Commissioner's decision and remands the case for further administrative proceedings in accordance with this order.

A Final Judgment will issue this day.

**SO ORDERED**, this the 2nd day of February, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
